**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.: 23-cv-02355-CNS-KAS

ESTATE OF LEROY "NICKY" TAYLOR, by and through its P.R., Derek Taylor

      Plaintiff,

v.

DENVER HEALTH AND HOSPITAL AUTHORITY, a political subdivision of the State of Colorado;
PETER CRUM, M.D., in his individual capacity;
MELISSA BROKAW, RN, in her individual capacity;
BERNICE CHAVARRIA TORRES, LPN, in her individual capacity;
ISAAC KARUGU, RN, in his individual capacity;
ALICE MUKAMUGEMANYI, LPN, in her individual capacity;
JOHN DOES 1-20, in their individual and official capacities;

      Defendants.

_____

**[PROPOSED] FINAL PRETRIAL ORDER**

_____

**1.  DATE AND APPEARANCES**

The final Pretrial Conference was held in person at 10:00 AM on July 29, 2025 before Judge Charlotte N. Sweeney. The parties were represented by counsel at the conference as follows:

***For Plaintiff Estate of Leroy Taylor:***

Ciara Anderson
Matthew Cron
Neil Sandhu
Rathod | Mohamedbhai LLC
2701 Lawrence St., Ste. 100
Denver, CO 80205

(303) 578-4400
ca@rmlawyers.com
mc@rmlawyers.com
ns@rmlawyers.com

**For Defendants:**
Anthony E. Derwinski
Michele S. Carey
Ruegsegger Simons & Stern, LLC
1700 Lincoln Street, Suite 4500
Denver, CO  80203
(303) 575-8026
aderwinski@rs3legal.com
mcarey@rs3legal.com

## 2.  JURISDICTION

In this action, Plaintiff maintains federal claims pursuant to 42 U.S.C. § 1983. Jurisdiction over Plaintiff's federal claims is conferred on this Court pursuant to 28 U.S.C. § 1331. Jurisdiction supporting Plaintiff's claim for attorneys' fees and costs is conferred by 42 U.S.C. § 1988.

## 3.  CLAIMS AND DEFENSES

***Plaintiff:***

On February 9, 2022, Leroy "Nicky" Taylor died alone in his cell at the Downtown Denver Van Cise-Simonet Detention Center's (hereinafter "jail") as a result of Denver Health and Hospital Authority ("Denver Health") medical staff's deliberate indifference to his serious medical needs. Between February 2 and February 9, 2022, Defendants ignored and downplayed Mr. Taylor's emergent medical symptoms, including chest pain, shortness of breath, dehydration, ongoing diarrhea and vomiting, inability to swallow, and his hands and feet turning blue. Defendants further ignored objective vital signs indicating

Mr. Taylor's need for medical care.

The extent of Mr. Taylor's agony, and lack of medical care, was obvious to all. While Denver Sheriff Department ("DSD") staff, prisoners, and civilians who spoke to Mr. Taylor on the phone all recognized Mr. Taylor's dire and deteriorating medical condition and advocated for him to receive treatment, one crucial cohort of persons failed to take Mr. Taylor's condition seriously: Denver Health medical staff. Each individual defendant knew or should have known of the high risk to Mr. Taylor's life given the severity of the symptoms he was experiencing and the dangerous consequences of not properly treating his medical condition. Each defendant failed to properly examine, monitor, treat, and care for Mr. Taylor, ultimately costing him his life.

Plaintiff asserts an Eighth Amendment deliberate indifference to medical needs claim against Defendants Peter Crum, Melissa Brokaw, Bernice Chavarria Torres, Isaac Karugu, and Alice Mukamugemanyi for failure to properly treat Mr. Taylor and failing in their role as gatekeepers. Additionally, Plaintiff asserts *Monell* claims against Defendant Denver Health for: (1) an informal custom of allowing medical staff to point the finger at other staff to avoid liability without anyone taking responsibility for a patient's care, and (2) failure to train and supervise.

**Defendants:**

The claims asserted in this action are stated against individual medical providers employed by Denver Health and Hospital Authority and *Monell* claims against Denver Health and Hospital Authority. The individuals, Dr. Peter Crum, Nurse Melissa Brokaw, Nurse Isaac Karugu, LPN Berenice Chavarria Torres and LPN Alice Mukamugemanyi, assert they were not deliberately indifferent to Leroy Taylor's serious medical needs in

violation of his constitutional rights. Denver Health and Hospital Authority asserts it did not violate Leroy Taylor's constitutional rights pursuant to the claims asserted under *Monell*.

In the time period leading up to his death at the Denver Jail, Mr. Taylor was seen by a multitude of medical providers and given tests, xrays, exams, medications and treatments. Video footage of Mr. Taylor at the jail depict him walking away from medical providers during their exams and Mr. Taylor had refused various testing recommended by the medical staff during his time at the jail. Additional footage before his death show that Mr. Taylor was seen by Dr. Christian Stob who confirmed he did not have blue hands and that Mr. Taylor was freely moving about his holding cell. Mr. Taylor himself told medical providers in this timeframe that nothing was wrong with him and he was fine. Mr. Taylor also stated to the medical staff and others that he did not want to be in the medical unit.

**Issues to be tried:**

Pursuant to the Order of July 16, 2025 (D. 115) the issues to be tried are as follows: (1) did the individual medical defendants violate Mr. Taylor's constitutional rights by being deliberately indifferent to Mr. Taylor's serious medical needs; (2) did Denver Health and Hospital Authority violate Mr. Taylor's constitutional rights under a *Monell* theory by: (a) having an informal custom or policy that customarily allows medical staff to point the finger at other staff; and (b) its failure to train its nursing staff as to inmates' presentation of blue hands and feet and how to escalate such needs.

**Damages:**

Plaintiff's counsel has represented that economic damages will not be presented and Plaintiff has withdrawn its request for lost future earning capacity and other economic damages. Plaintiff is seeking non-economic damages, attorneys' fees and costs associated with their § 1983 claims.

## 4.  STIPULATIONS

1.      Venue is proper in the District of Colorado under 28 U.S.C. § 1391(b).

2.      At all times relevant to this case, the Individual Defendants acted under color of state law as medical providers employed by Defendant Denver Health.

3.      Mr. Taylor died on February 9, 2022.

## 5.  PENDING MOTIONS

The following motions are currently pending: None

## 6.  WITNESSES

a.      List the nonexpert witnesses to be called by each party.  List separately:

(1)      witnesses who will be present at trial (see Fed. R. Civ. P. 26(a)(3)(A));

*Plaintiff's Will-Call Witnesses:*

1. **Melissa Brokaw.**
Ms. Brokaw is a Defendant in this case. She is expected to testify about her employment at Denver Health, providing medical care to people in the Downtown Denver Jail, the medical care provided to Mr. Leroy Taylor, and other relevant matters to the claims, defenses, and damages at issue in this action. She is expected to testify in person.

2. **Peter Crum.**
Dr. Crum is a Defendant in this case. He is expected to testify about his employment at Denver Health, providing medical care to people in the Downtown Denver Jail, the medical care provided to Mr. Leroy Taylor, and other relevant matters to the claims, defenses, and damages at issue in this action. He is expected to testify in person.

3. **Bernice Chavarria Torres**

   Ms. Torres is a Defendant in this case. She is expected to testify about her employment at Denver Health, providing medical care to people in the Downtown Denver Jail, the medical care provided to Mr. Leroy Taylor, and other relevant matters to the claims, defenses, and damages at issue in this action. She is expected to testify in person.

4. **Isaac Karugu**

   Mr. Karugu is a Defendant in this case. He is expected to testify about his employment at Denver Health providing medical care to people in the Downtown Denver Jail, and the medical care provided to Mr. Leroy Taylor, and other relevant matters to the claims, defenses, and damages at issue in this action. He is expected to testify in person.

5. **Alice Mukamugemanyi**

   Ms. Mukamugemanyi is a Defendant in this case. She is expected to testify about her employment at Denver Health, providing medical care to people in the Downtown Denver Jail, the medical care provided to Mr. Leroy Taylor, and other relevant matters to the claims, defenses, and damages at issue in this action. She is expected to testify in person.

6. **Karen McGill**

   Sergeant McGill is expected to testify about her interactions with Mr. Taylor in the week leading up to Mr. Taylor's death, including on the day that he died, the efforts to get Mr. Taylor medical care, the investigation into Mr. Taylor's death, and other relevant matters to the claims, defenses, and damages at issues in this action. She is expected to testify in person.

***Defendants' Will-Call Witnesses:***

1. **Derek Zorn Taylor**

   Mr. Taylor is the personal representative of the Estate of Leroy Taylor. Mr. Taylor will testify regarding the Estate's damages, his background, his knowledge and background information concerning Leroy Taylor and the claims asserted by the Estate. He is expected to testify in person.

***Plaintiff's May-Call Witnesses:***

1. **Derek Taylor.**

   Derek Taylor was Mr. Taylor's son and is the personal representative of Mr. Taylor's estate. Mr. Derek Taylor may testify regarding the Estate's damages and other information relevant to the claims and defenses in the case. If called to testify, he is expected to testify in person.

**2. Shawn Herron**

Mr. Herron was Mr. Taylor's son. Mr. Herron may testify regarding the Estate's damages and other information relevant to the claims and defenses in the case. If called to testify, he is expected to testify in person.

**3. Sandra Manlove**

Sandra Manlove was Mr. Taylor's sister and roommate. Ms. Manlove may testify regarding Mr. Taylor's life, his condition in the week leading up to his death, and other information relevant to the claims and defenses in this case. If called to testify, she may testify in person.

**4. Jackie Richardson**

Ms. Richardson was Mr. Taylor's cousin. Ms. Richardson may testify regarding Mr. Taylor's life, his condition in the week leading up to his death, and other information relevant to the claims and defenses in this case. If called to testify, she may testify in person.

**5. Floyd Kirkendall**

Mr. Kirkendall was in Mr. Taylor's pod in the week leading up to Mr. Taylor's death. Mr. Kirkendall may testify about his observations of Mr. Taylor's condition, his experience with medical staff in the jail, his efforts to get Mr. Taylor medical care, and other information relevant to the claims and defenses in this case. If called to testify, he may testify in person.

**6. Mitchell Pierce**

Mr. Pierce was in Mr. Taylor's pod in the week leading up to Mr. Taylor's death. Mr. Pierce may testify about his observations of Mr. Taylor's condition, his experience with medical staff in the jail, his efforts to get Mr. Taylor medical care, and other information relevant to the claims and defenses in this case. If called to testify, he may testify in person.

**7. Christopher Wasnak**

Mr. Wasnak was in Mr. Taylor's pod in the week leading up to Mr. Taylor's death. Mr. Wasnak may testify about his observations of Mr. Taylor's condition, his experience with medical staff in the jail, his efforts to get Mr. Taylor medical care, and other information relevant to the claims and defenses in this case. If called to testify, he may testify in person.

**8. Willie Williams**

Mr. Williams was in Mr. Taylor's pod in the week leading up to Mr. Taylor's death. Mr. Williams may testify about his observations of Mr. Taylor's condition, his experience with medical staff in the jail, his efforts to get Mr. Taylor medical care, and other information relevant to the claims and defenses in this case. If called to testify, he may testify in person.

9. **Michael Parrish**

Mr. Parrish was in Mr. Taylor's pod in the week leading up to Mr. Taylor's death. Mr. Parrish may testify about his observations of Mr. Taylor's condition, his experience with medical staff in the jail, his efforts to get Mr. Taylor medical care, and other information relevant to the claims and defenses in this case. If called to testify, he may testify in person.

7. **Serge Houmey**

Serge Houmey was a deputy at the Denver Sheriff's Department who interacted with Mr. Taylor on February 9, 2022. If called, Deputy Houmey is expected to testify about his experience working at the jail, his interactions with Mr. Taylor, the efforts to get Mr. Taylor medical care, the investigation into Mr. Taylor's death, and other matters relevant to the claims, defenses, and damages at issues in this action. Deputy Houmey may be called to testify in person or by means of deposition.

10. **Rajiv Panchal**

Rajiv Panchal was a deputy at the Denver Sheriff's Department who interacted with Mr. Taylor on February 9, 2022. If called, Deputy Panchal is expected to testify about his experience working at the jail, his interactions with Mr. Taylor, the efforts to get Mr. Taylor medical care, the investigation into Mr. Taylor's death, and other relevant matters to the claims, defenses, and damages at issues in this action. Deputy Panchal may be called to testify in person or by means of deposition.

11. **Eric Givens**

Eric Givens was a captain at the Denver Sheriff's Department who interacted with Mr. Taylor on February 9, 2022. If called, Captain Givens is expected to testify about his experience working at the jail, his interactions with Mr. Taylor, the efforts to get Mr. Taylor medical care, the investigation into Mr. Taylor's death, and other matters relevant to the claims, defenses, and damages at issues in this action. Mr. Givens may be called to testify in person or by means of deposition.

12. **Michael May**

Officer May is a Denver Police Department officer who investigated Mr. Taylor's death. Officer May  may have information relevant to the investigation, his experience investigating deaths at the jail, and other information relevant to the claims and defenses in this case. If called to testify, he may testify in person or by means of deposition.

13. **Carmen Kassatly**

Ms. Kassatly was Defendant Denver Health's Rule 30(b)(6) witness. If called, Ms. Kassatly is expected to testify about organizational and operational structure within the jail; individual defendant's employment, performance, counseling, disciplinary actions, investigations, and terminations; the investigation into Mr. Taylor's death;

policies, training, and expectations of medical staff; Denver Health's policies, protocols, practices, and training pertaining to the monitoring of inmates and the decision making process of whether to seek emergent or outpatient care for patient presenting with diarrhea, vomiting, trouble breathing, stomach pain, chest pain, inability to swallow, delirium, and/or cyanosis; training pertaining to identifying serious medical needs; the decision to revoke Melissa Brokaw's access to the jail; several other incidents with factual similarity to this case; and other matters relevant to the claims, defenses, and damages at issues in this action. If called to testify, she may testify in person or by means of deposition.

14. **Jose Gurule**

Jose Gurule Denver Sheriff's Department's 30(b)(6) witness. If called, Mr. Gurule is expected to testify about DSD's organizational and operational relationship with Denver Health; the investigation into Mr. Taylor's death; policies, training, and expectations of medical staff; the decision to revoke Melissa Brokaw's access to the jail; and other matters relevant to the claims, defenses, and damages at issues in this action. If called to testify, he may testify in person or by means of his deposition.

15. **Carl McEnroe**

Mr. McEnroe was Denver's 30(b)(6) witness. If called, Mr. McEnroe is expected to testify about the Administrative Investigative Unit (AIU) investigation into Mr. Taylor's death and other matters relevant to the claims, defenses, and damages at issue in this action. If called to testify, he may testify in person or by means of his deposition.

16. **Alexandra Douglas**

Ms. Douglas was Mr. Taylor's public defender. If called, Ms. Douglas is expected to testify about the voicemail that Mr. Taylor left her and the emergency motion that she filed on his behalf. If called to testify, she may testify in person.

***Defendants' May-Call Witnesses:***

**1. Dr. Peter Crum**

Dr. Crum is a Defendant in this case. He is expected to testify about his background, employment at Denver Health, providing medical care at the jail, the medical care provided to Mr. Leroy Taylor, Mr. Taylor's medical records, the Denver Health policies and procedures at the jail and the relevant issues in this action. He is expected to testify in person.

**2. Nurse Melissa Brokaw.**

Nurse Brokaw is a Defendant in this case. She is expected to testify about her background, employment at Denver Health, providing medical care at the jail, the medical care provided to Mr. Leroy Taylor, Mr. Taylor's medical records and the relevant issues in this action. She is expected to testify in person.

### 3. LPN Berenice Chavarria Torres

LPN Torres is a Defendant in this case. She is expected to testify about her background, employment at Denver Health, providing medical care at the jail, the medical care provided to Mr. Leroy Taylor, Mr. Taylor's medical records, the video footage concerning her interactions with Mr. Taylor and the relevant issues in this action. She is expected to testify in person.

### 4. Nurse Isaac Karugu

Nurse Karugu is a Defendant in this case. He is expected to testify about his background, employment at Denver Health providing medical care at the jail, the medical care provided to Mr. Leroy Taylor, Mr. Taylor's medical records, and the relevant issues in this action. He is expected to testify in person.

### 5. LPN Alice Mukamugemanyi

LPN Mukamugemanyi is a Defendant in this case. She is expected to testify about her background, employment at Denver Health, providing medical care at the jail, the medical care provided to Mr. Leroy Taylor, Mr. Taylor's medical records, the video footage concerning her interactions with Mr. Taylor and the relevant issues in this action. She is expected to testify in person.

### 6. Dr. Christian Stob

Dr. Stob is a Denver Health employee and doctor at the Denver Jail. He is expected to testify about his background, employment at Denver Health, his interactions with Leroy Taylor, the video footage concerning his interactions with Mr. Taylor and the relevant issues in this action. He is expected to testify in person.

### 7. Nurse Carmen Kassatly

Nurse Kassatly is a 30(b)(6) designee of Denver Health. Nurse Kassatly will testify as to the operational structure of Denver Health at the jail, the investigation into Mr. Taylor's death, Denver Health's policies, training, and requirements of medical staff and the relevant issues in this action. She is expected to testify in person.

### 8. Michael May

Officer May works for the Denver Police Department and who investigated Mr. Taylor's death. Officer May will have information concerning his investigation and findings. He is expected to testify in person.

### 9. Karen McGill

Sergeant McGill works for the Denver Sheriff's Department and worked at the jail at the time of Mr. Taylor's death. She is expected to testify about her interactions with Mr. Taylor, the medical staff, her authority at the jail to summon EMS care, protocols of the DSD concerning EMS transport and medical emergencies and the relevant issues in this action. She is expected to testify in person.

## 10. Jose Gurule

Captain Jose Gurule is a 30(b)(6) witness employed by the City and County of Denver through the Denver Sheriff's Department. Captain Gurule is expected to testify in regards to the DSD's operation of the jail, the layout of the jail, video capture and authenticity of footage, the authority of the DSD at the jail, DSD's relevant policies and procedures at the jail, DSD's investigation into Mr. Taylor's death, medical care and EMS operation at the jail, Mr. Taylor's background and information known by the DSD and the relevant issues in this action. He is expected to testify in person.

## 11. Elias Diggins

Sheriff Elias Diggins is the Denver County Sheriff. He is expected to testify concerning the investigation into Mr. Taylor's death, his meetings with Mr. Taylor's family after his death, DSD's operation of the jail, his decisions concerning the outcome of the investigation into Mr. Taylor's death and the relevant issues in this action. He is expected to testify in person.

## 12. Sandra Manlove

Sandra Manlove is Leroy Taylor's sister and was his roommate preceding his death. Ms. Manlove is expected to testify concerning Mr. Taylor's background, his history and information concerning the claims asserted and relevant issues in this action. She is expected to testify in person.

## 13. Shawn Herron

Mr. Herron is Mr. Taylor's son. Mr. Herron may testify regarding the Estate's damages and other information relevant to the claims and defenses in the case. He is expected to testify in person.

## 14. Carl McEncroe

Mr. McEncroe is a 30(b)(6) witness who was a designee of the City and County of Denver. Mr. McEncroe will testify concerning the City's investigation into the relevant issues of this action, the interviews conducted by the City and Mr. Taylor's previous refusal to go to the medical unit at the jail.

## 15. Sergeant Dionido

Sgt. Dionido worked at the jail and was at the deputy's desk when Mr. Taylor was brought from 5D to the temporary holding cell in 3MED on February 9, 2022. He is expected to have information and knowledge concerning Mr. Taylor's state, his discussions with DSD and Denver Health staff and information concerning the background of the situation involving Mr. Taylor.

**16.** In addition to the preceding witnesses, the Defendants list by reference any witness listed by Plaintiff and any witness which may be called in rebuttal. The Defendants do not waive any objection they may have to the admissibility of the testimony of any such witness in the event any such witness is called by Plaintiff.

Defendants reserve the right to call any witness needed for rebuttal or impeachment.

***Plaintiff's nonexpert witnesses where testimony is expected to be presented by means of a deposition:***

1. **Denver Sheriff Department.**
   Plaintiff may introduce the Federal Rule of Civil Procedure 30(b)(6) testimony of Denver Sheriff Department regarding DSD's organizational and operational relationship with Denver Health; the investigation into Mr. Taylor's death; policies, training, and expectations of medical staff; the decision to revoke Melissa Brokaw's access to the jail; and other matters relevant to the claims, defenses, and damages at issues in this action.

2. **Defendant Denver Health**
   Plaintiff may introduce the Federal Rule of Civil Procedure 30(b)(6) testimony of Defendant Denver Health's Rule 30(b)(6) regarding Denver Health's organizational and operational structure within the jail; individual defendant's employment, performance, counseling, disciplinary actions, investigations, and terminations; the investigation into Mr. Taylor's death; policies, training, and expectations of medical staff; Denver Health's policies, protocols, practices, and training pertaining to the monitoring of inmates and the decision making process of whether to seek emergent or outpatient care for patient presenting with diarrhea, vomiting, trouble breathing, stomach pain, chest pain, inability to swallow, delirium, and/or cyanosis; training pertaining to identifying serious medical needs; the decision to revoke Melissa Brokaw's access to the jail; several other incidents with factual similarity to this case; and other matters relevant to the claims, defenses, and damages at issues in this action.

***Defendants' nonexpert witnesses where testimony is expected to be presented by means of a deposition:***

None at the present time. The Defendants reserve the right to amend this position, particularly concerning 30(b)(6) designees of the City and County of Denver and/or the DSD.

b.    List the expert witnesses to be called by each party.  List separately:

***Plaintiff's Will-Call Expert Witnesses:***

1. **Murray Young, M.D.**
   Dr. Young is Plaintiff's retained physician expert in this case. Dr. Young is expected to testify to his findings regarding Dr. Crum, Denver Health's policies, training, and supervision, and other matters related to the claims, defenses, and damages at issue in this case. He is expected to testify in person.

    **2. Susan Minter, DNP, NP-C**
RN Minter is Plaintiff's retained nursing expert in this case. RN Minter is expected to testify to her findings regarding the nurses' care, supervision, and other matters related to the claims, defenses, and damages at issue in this case. She is expected to testify in person.

***Defendants' Will-Call Expert Witnesses:***

    None.

***Plaintiff's May-Call Expert Witnesses:***

    **1. Ian Puffenberger**
Dr. Puffenberger was the forensic pathologist who performed Mr. Taylor's autopsy. Dr. Puffenberger may be called to testify about Mr. Taylor's autopsy and cause of death. Dr. Puffenberger is expected to testify in accordance with the facts and opinions rendered in the autopsy report previously provided to Defendants and in his deposition. In addition, he is expected to testify to any communications he may have had with Plaintiff, Defendants, and/or other witnesses regarding the autopsy and/or facts and circumstances alleged in this case. Dr. Puffenberger may testify in person or by means of deposition.

***Defendants' May-Call Expert Witnesses:***

    **1. Susan M. Tiona, M.D.**
Dr. Tiona is Defendants' retained medical expert in this matter. Dr. Tiona is expected to testify as to her background, opinions, findings and her expert report related to the claims and defenses in this action. She is expected to testify in person.

    **2. Ian Puffenberger, M.D.**
Dr. Puffenberger is a forensic pathologist and employed by the City and County of Denver Office of the Medical Examiner. He performed the autopsy after Mr. Taylor's death. He is expected to testify as to his medical findings and opinions concerning the autopsy, the cause of death and his findings from the autopsy. He is expected to testify in person.

    The parties do not expect to present any expert witness testimony by means of a

deposition.

## 7. EXHIBITS

a.    List the exhibits to be offered by each party and identify those to be stipulated into evidence. This list should be specific enough so that other parties and the court can

understand, merely by referring to the list, each separate exhibit which will be offered. General references such as "all deposition exhibits "or" all documents produced during discovery" are unacceptable.

       (1)    Plaintiff(s):

*See* Plaintiff's Exhibit List, attached hereto as **Exhibit A**.

       (2)    Defendant(s)

*See* Defendants' Exhibit List, attached hereto as **Exhibit B**.

b.     Copies of listed exhibits must be provided to opposing counsel and any *pro se* party no later than 30 days before trial.  The objections contemplated by Fed. R. Civ. P. 26(a)(3) shall be filed with the clerk and served by hand delivery or facsimile no later than 14 days after the exhibits are provided.

## 8.  DISCOVERY

Discovery has been completed.

## 9.  SPECIAL ISSUES

None.

## 10.  SETTLEMENT

a. Counsel for the parties and any *pro se* party mediated virtually on May 17, 2023, met in person and by telephone in January 2025, and met by telephone on July 15, 2025, to discuss in good faith the settlement of the case.

b.    The participants in the settlement conference included counsel, party representatives, and any *pro se* party.

c.    The parties were promptly informed of all offers of settlement.

d.    Counsel for the parties and any *pro se* party are continuing to discuss whether to hold future settlement conferences.

e.    It appears from the discussion by all counsel and any *pro se* party that there is

some possibility of settlement.

f.        Counsel for the parties and any *pro se* party considered ADR in accordance with

D.C.COLO.LCivR.16.6.

## 11.  OFFER OF JUDGMENT

Counsel and any *pro se* party acknowledge familiarity with the provision of Rule

68 (Offer of Judgment) of the Federal Rules of Civil Procedure. Counsel have discussed

it with the clients against whom claims are made in this case.

## 12.  EFFECT OF FINAL PRETRIAL ORDER

Hereafter, this Final Pretrial Order will control the subsequent course of this action

and the trial and may not be amended except by consent of the parties and approval by

the court or by order of the court to prevent manifest injustice.  The pleadings will be

deemed merged herein.  This Final Pretrial Order supersedes the Scheduling Order.  In

the event of ambiguity in any provision of this Final Pretrial Order, reference may be made

to the record of the pretrial conference to the extent reported by stenographic notes and

to the pleadings.

## 13.  TRIAL AND ESTIMATED TRIAL TIME; FURTHER TRIAL PREPARATION PROCEEDINGS

1.       Trial is to a jury.

2.       The estimated trial time is ten (10) days.

3.       Trial will be held at the Alfred A. Arraj United States Courthouse in Denver,

Colorado.

4.       No other orders pertinent to trial proceedings.


DATED this _____ day of _____, 2025.

BY THE COURT


_____
Hon. Charlotte N. Sweeney
United States District Judge


APPROVED:


RATHOD | MOHAMEDBHAI LLC                    Ruegsegger Simons & Stern, LLC


*s/ Ciara M. Anderson*                          *s/ Anthony E. Derwinksi*
Ciara M. Anderson                           Anthony E. Derwinski
Matthew Cron                                Michele C. Carey
Qusair Mohamedbhai                          1700 Lincoln Street, Suite 4500
Neil Sandhu                                 Denver, CO  80203
2701 Lawrence Street, Suite 100             (303) 575-8026
Denver, Colorado 80205                      aderwinski@rs3legal.com
(303) 578-4400                              mcarey@rs3legal.com
ca@rmlawyers.com
mc@rmlawyers.com
qm@rmlawyers.com                            *Attorneys for Defendants*
ns@rmlawyers.com


CHRISTOPHER K. GILBERT, ESQ., LLC
Christopher K. Gilbert
cgilbert@gilbert-law.com


*Attorneys for Plaintiff*